ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
Joey L. Blanch
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section
California Bar Number:   186487
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3315
        Facsimile: (213) 894-3713
        E-mail: joey.blanch@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>HAROUT SARAFIAN,<br> et al.,<br><br>                    Defendants. | ) CR No. 09-68A-VAP<br>)<br>) GOVERNMENT'S REPLY RE DEFENDANT<br>) JONATHAN SUDDUTH'S SENTENCING<br>) POSITION<br>)<br>) Hearing Date: March 5, 2012<br>)<br>)<br>)<br>) |

1      Plaintiff United States of America, through its counsel of
2  record, the United States Attorney's Office for the Central
3  District, hereby submits its reply to defendant Jonathan
4  Sudduth's sentencing position, pursuant to Rule 32(b)(6)(B) of
5  the Federal Rules of Criminal Procedure.
6      This position is based on the attached Memorandum, the files
7  and records of this case, and any argument to be presented at the
8  sentencing hearing.
9  Dated: March 1, 2012            Respectfully submitted,
10                                 ANDRÉ BIROTTE JR.
                                   United States Attorney
11
                                   ROBERT E. DUGDALE
12                                 Assistant United States Attorney
                                   Chief, Criminal Division
13

14                                 __/s/_____
                                   JOEY L. BLANCH
15                                 YVONNE G. GARCIA
                                   ANDREW MCCORMACK
16                                 Assistant United States Attorneys

17                                 Attorneys for Plaintiff
                                   United States of America
18

19

20

21

22

23

24

25

26

27

28

                                    2

TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . .  ii

MEMORANDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Although Defendant Requests a 60-Month
        Sentencing, the Mandatory Minimum Sentence
        This Court May Impose is 15 Years.. . . . . . . . . . . 1

    B.   Defendant's Generalized Complaints Regarding
        the Sentencing Guidelines . . . . . . . . . . . . . . 3

    C.   Comparative Sentencing. . . . . . . . . . . . . . . 10

    D.   A 5-Level Enhancement for Distribution Should Apply. 12

    E.   Defendant's Role in the Conspiracy. . . . . . . . . 15

    F.   Defendant Is Not Entitled to a Downward
        Departure for Potential Vulnerability to
        Abuse in Prison.. . . . . . . . . . . . . . . . . . 17

    G.   Juvenile Adjudications. . . . . . . . . . . . . . . 19

    H.   Conclusion. . . . . . . . . . . . . . . . . . . . . 20

-i-

TABLE OF AUTHORITIES

FEDERAL CASES:

Ewing v. California,
        538 U.S. 11 (2003)  . . . . . . . . . . . . . . . . . 2

Harmelin v. Michigan,
        501 U.S. 957 (1991) . . . . . . . . . . . . . . . . . 2

Hutto v. Davis,
        454 U.S. 370 (1982) . . . . . . . . . . . . . . . . . 2

Osborne v. Ohio,
        495 U.S. 103 (1990) . . . . . . . . . . . . . . . . . 3

Solem v. Helm,
        463 U.S. 277 (1983) . . . . . . . . . . . . . . . . . 2

United States v. Acosta,
        619 F.3d 956 (8th Cir. 2010)  . . . . . . . . . . . . 9

United States v. Aguirre,
        2011 WL 3629236 (9th Cir. Aug. 18, 2011). . . . . . . 9

United States v. Alfaro-Moncada,
        607 F.3d 720 (11th Cir. 2010). . . . . . . . . . . . . 9

United States v. Aumais,
        656 F.3d 147 (2d Cir. 2011). . . . . . . . . . . . . . 7

United States v. Ballard,
        2011 WL 6223122 (11th Cir. Dec. 15, 2011). . . . . . . 9

United States v. Bastian,
        603 F.3d 460 (8th Cir. 2010)  . . . . . . . . . . 14, 15

United States v. Bauer,
        626 F.3d 1004 (8th Cir. 2010) . . . . . . . . . . . . 9

United States v. Blinkinsop,
        606 F.3d 1110 (9th Cir. 2010) . . . . . . . . . . . . 9

United States v. Bolton,
        2012 WL 141958 (6th Cir. Jan. 19, 2012). . . . . . . . 8

United States v. Brooks,
        628 F.3d 791 (6th Cir. 2011)  . . . . . . . . . . . . 8

United States v. Brown,
        634 F.3d 954 (7th Cir. 2011)  . . . . . . . . . . . . 8

United States v. Burdette,
        2011 WL 6275943 (4th Cir. Dec. 16, 2011). . . . . . . 8

-ii-

TABLE OF AUTHORITIES (contd)

FEDERAL CASES:

United States v. Burman,
     666 F.3d 1113 (8th Cir. 2012) . . . . . . . . . . . . . 8, 14

United States v. Clogston,
     662 F.3d 558 (1st Cir. 2011) . . . . . . . . . . . . . . 7

United States v. Coopman,
     602 F.3d 814 (7th Cir. 2010) . . . . . . . . . . . . . . 8

United States v. Croucher,
     2012 WL 256027 (10th Cir. Jan. 30, 2012).. . . . . . . . 9

United States v. Cunningham,
     2012 WL 593110 (6th Cir. Feb. 24, 2012). . . . . . . . . 8

United States v. Dolehide,
     663 F.3d 343 (8th Cir. 2011) . . . . . . . . . . . . . . 8

United States v. Dudeck,
     657 F.3d 424 (6th Cir. 2011) . . . . . . . . . . . . . . 8

United States v. Estey,
     595 F.3d 836 (8th Cir. 2010) . . . . . . . . . . . . . . 9

United States v. Evans,
     333 U.S. 483 (1948) . . . . . . . . . . . . . . . . . . 5

United States v. Evers,
     2012 WL 413810 (6th Cir. Feb. 10, 2012). . . . . . . . . 8

United States v. Garthus,
     652 F.3d 715 (7th Cir. 2011) . . . . . . . . . . . . . . 8

United States v. Goldberg,
     295 F.3d 1133 (10th Cir. 2002).. . . . . . . . . . . . . 9

United States v. Goluba,
     2012 WL 560706 (5th Cir. Feb. 22, 2012). . . . . . . . . 8

United States v. Griffin,
     482 F.3d 1008 (8th Cir.2007) . . . . . . . . . . . 14, 15

United States v. Grigsby,
     2012 WL 35587 (9th Cir. Jan. 9, 2012). . . . . . . . . . 9

United States v. Hamby,
     2011 WL 2693963 (W.D. Va. July 12, 2011).. . . . . . . . 8

United States v. Hardy,
     2011 WL 6093410 (3d Cir. Dec. 8, 2011).. . . . . . . . . 7

-iii-

TABLE OF AUTHORITIES (contd)

FEDERAL CASES:

United States v. Hill,
    2012 WL 516191 (6th Cir. Feb. 17, 2012). . . . . . . . . . 8

United States v. Harris,
    154 F.3d 1082 (9th Cir.1998)  . . . . . . . . . . . . . . 2

United States v. Henderson,
    649 F.3d 955 (9th Cir. 2011)  . . . . . . . . . . . . 5, 6

United States v. Kimbrough,
    552 U.S. 85 S. Ct. 558 (2007). . . . . . . . . . . . 4, 5

United States v. Kirchof,
    505 F.3d 409 (6th Cir. 2007)  . . . . . . . . . . . . . 5

United States v. Koch,
    625 F.3d 470 (8th Cir. 2010)  . . . . . . . . . . . . . 8

United States v. Lara,
    905 F.2d 599 (2d Cir. 1990)   . . . . . . . . . . . . 18

United States v. Magner,
    2012 WL 206013 (2d Cir. Jan. 25, 2012).. . . . . . . . . 7

United States v. Maier,
    639 F.3d 927 (9th Cir. 2011)  . . . . . . . . . . . . . 9

United States v. Mantanes,
    632 F.3d 372 (7th Cir. 2011)  . . . . . . . . . . . . . 8

United States v. Maulding,
    627 F.3d 285 (7th Cir. 2010)  . . . . . . . . . . . . . 8

United States v. McDaniel,
    631 F.3d 1204 (11th Cir. 2011).. . . . . . . . . . . . . 9

United States v. McGarrity,
    2012 WL 370104 (11th Cir. Feb. 6, 2012). . . . . . . . . 9

United States v. McKee,
    2010 WL 1664081 (D.Md. April 21, 2010).. . . . . . . . . 8

United States v. McNerney,
    636 F.3d 772 (6th Cir. March 1, 2011) . . . . . . . . 5, 8

United States v. Meiners,
    485 F.3d 1211 (9th Cir. 2007) . . . . . . . . . . . . 1, 3

United States v. Miller,
    665 F.3d 114 (5th Cir. 2011)  . . . . . . . . . . . . . 6

-iv-

TABLE OF AUTHORITIES (contd)

FEDERAL CASES:

United States v. Nelson,
    2011 WL 4584788 (11th Cir. Oct. 5, 2011).. . . . . . . . . . 9

United States v. Nissen,
    666 F.3d 486 (8th Cir. 2012)  . . . . . . . . . . . . . . . 8

United States v. Overmyer,
    663 F.3d 862 (6th Cir. 2011)  . . . . . . . . . . . . . . . 8

United States v. Pabon-Cruz,
    255 F. Supp. 2d 200 (S.D.N.Y.2003).. . . . . . . . . . . . 3

United States v. Parish,
    308 F.3d 1032 (9th Cir. 2002) . . . . . . . . . 17, 18, 19

United States v. Reaid,
    2012 WL 309316 (11th Cir. Feb. 2, 2012). . . . . . . . . . 9

United States v. Regan,
    627 F.3d 1348 (10th Cir. 2010).. . . . . . . . . . . . . . 9

United States v. Reilly,
    662 F.3d 754 (6th Cir. 2011)  . . . . . . . . . . . . . . . 8

United States v. Rodgers,
    610 F.3d 975 (7th Cir. 2010)  . . . . . . . . . . . . . . . 8

United States v. Sampson,
    606 F.3d 505 (8th Cir. 2010)  . . . . . . . . . . . . . . . 9

United States v. Schaefer,
    2011 WL 1807387 (N.D.Iowa May 11, 2011). . . . . . . . . . 8

United States v. Shigley,
    2011 WL 4588916 (9th Cir. Oct. 5, 2011). . . . . . . . . . 9

United States v. Shuler,
    598 F.3d 444 (8th Cir. 2010)  . . . . . . . . . . . . . . . 9

United States v. Smith,
    440 F.3d 704 (5th Cir. 2006)  . . . . . . . . . . . . . . . 4

United States v. Snodgrass,
    635 F.3d 324 (7th Cir. 2011)  . . . . . . . . . . . . . . . 8

United States v. Stabile,
    633 F.3d 219 (3d Cir. 2011)   . . . . . . . . . . . . . . . 7

United States v. Stearman,
    2010 WL 5297165 (M.D. Fla. Dec. 20, 2010). . . . . . . . . 9

TABLE OF AUTHORITIES (contd)

FEDERAL CASES:

United States v. Strieper,
    2012 WL 208043 (4th Cir. Jan. 23, 2012). . . . . . . . . . 8

United States v. Stults,
    575 F.3d 834 (8th Cir. 2009).. . . . . . . . . . . . 14, 15

United States v. Turner,
    626 F.3d 566 (11th Cir. 2010) . . . . . . . . . . . . . . 9

United States v. Ultsch,
    578 F.3d 827 (8th Cir. 2009).. . . . . . . . . . . . . 14

United States v. Wayerski,
    624 F.3d 1342 (11th Cir. 2010) . . . . . . . . . . . . . 9

United States v. Webb,
    2011 WL 1930707 (D.N.D. May 20, 2011). . . . . . . . . . 8

FEDERAL STATUTES:

18 U.S.C. § 2251(d)(1). . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3553(a). . . . . . . . . . . . . . . . . . . . . 4

**MEMORANDUM**

In its sentencing position, the government recommended that defendant Sudduth be sentenced twenty-two years in custody.  This recommendation is based, in part, on defendant's confession to molesting two young boys.  Defendant, however, requests a sentence of five years.  The government has already argued its sentencing position in detail, and will not reiterate those arguments here.  However, in his sentencing position, defendant raised a number of issues to which the government responds.

**A.   Although Defendant Requests a 60-Month Sentencing, the Mandatory Minimum Sentence This Court May Impose is 15 Years**

Defendant pleaded guilty to conspiracy to advertise child pornography, in violation of Title 18, United States Code, Section 2251(d)(1), (e).  This crime carries a mandatory minimum sentence of 15 years.  18 U.S.C. § 2251(d)(1), (e); Plea Agreement ¶ 5.  In Section VI of his sentencing position, defendant challenges the statutory maximum sentence as "unconstitutional, cruel, unusual, and excessive."  Def. Pos. at 14.  The government assumes that defendant meant to challenge the mandatory minimum sentence, as he seeks a sentence of five years.  Def. Pos. at 26.  The Ninth Circuit has rejected this argument.  See United States v. Meiners, 485 F.3d 1211 (9th Cir. 2007) (rejecting an Eighth Amendment challenge to the 15-year mandatory minimum sentence for advertising child pornography).[1]

_____

[1]   Although defendant states that he challenges the statutory sentence for his crime, his argument actually focuses exclusively on the Sentencing Guidelines.  Def. Pos. at 14-15.  While the Sentencing Guidelines are advisory, the statutory

1

1    The Eighth Amendment forbids as "cruel and unusual

2 punishment" prison terms that are "grossly disproportionate." See

3 Solem v. Helm, 463 U.S. 277, 288 (1983); United States v. Harris,

4 154 F.3d 1082, 1084 (9th Cir.1998).  The Supreme Court has

5 repeatedly emphasized that "federal courts should be reluctant to

6 review legislatively mandated terms of imprisonment, and that

7 successful challenges to the proportionality of particular

8 sentences should be exceedingly rare." Ewing v. California, 538

9 U.S. 11, 22 (2003) (quoting Hutto v. Davis, 454 U.S. 370, 374,

10 (1982) (per curiam)).

11    When confronted with an Eighth Amendment challenge, the

12 Court must first make "a threshold comparison of the crime

13 committed and the sentence imposed."  Harmelin v. Michigan, 501

14 U.S. 957, 1005(1991) (Kennedy, J., concurring in part and

15 concurring in the judgment).  In the rare case in which a

16 threshold comparison leads to an inference of gross

17 disproportionality, the Court must then compare the sentence at

18 issue with sentences imposed for analogous crimes in the same and

19 other jurisdictions.  See id.

20    In Meiners, the defendant traded child pornography using an

21 file server, known as an "F-serve," which he utilized to

22 advertise child pornography images for distribution in exchange

23 for other child pornography images to be sent to him.  Meiners,

24 485 F.3d at 1212.  He was conviction of advertising child

25 ─────────────────────

26 mandatory minimum and maximum sentences are binding on the Court.
   None of the cases cited by defendant have anything to do with
27 defendant's claim that the statutory sentence is unconstitutional
   pursuant to the Eighth Amendment prohibition on cruel and unusual
28 punishment.

pornography in violation of Title 18, United States Code, Section 2251(d), the very crime for which defendant here was convicted. Id. The Ninth Circuit found that the defendant's challenge failed at the threshold stage, because a 15-year sentence was not grossly disproportionate to the gravity of his offense. Id. at 1213. Specifically, the Ninth Circuit found that "like drug possession and distribution offenses, advertising and distributing child pornography is a significant crime because it threatens to cause grave harm to society." Id. The Court continued, "The distribution of child pornography feeds an industry that causes physiological, emotional and mental trauma to the child victims. By advertising his desire to receive and trade child pornography, [the defendant] directly encouraged the production and distribution of material that is created by abusing children." Id., citing Osborne v. Ohio, 495 U.S. 103, 109 (1990) and United States v. Pabon-Cruz, 255 F.Supp.2d 200, 210 (S.D.N.Y.2003) (recognizing that "the advertising statute bears a different relationship to the purpose of preventing child abuse than does the receipt and distribution statute" because advertising directly encourages production of child pornography).

Defendant's Eight Amendment challenge to the 15-year mandatory minimum fails on its face.

**B. Defendant's Generalized Complaints Regarding the Sentencing Guidelines**

Defendant spends many pages in his sentencing position generally complaining about the Sentencing Guidelines, arguing that they are "meaningless," and suggesting that there is no "rhyme or reason" to their "puffed up numbers." Def Pos. at 4,

3

14-18.  Further, defendant complains that the Guidelines lack "empirical support," overstating the seriousness of the offense, and should thus be ignored.  Def. Pos. at 18.

The government agrees with defendant that US Sentencing Guidelines are only advisory.  However, though the defendant would like to change the paradigm of how child pornography cases are sentenced, the law is clear.  First, the Guideline Sentence must be correctly calculated.  Then, the Court's reasoning must be guided by the sentencing considerations set forth in 18 U.S.C. §3553(a).  United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006).

The Supreme Court made clear in United States v. Kimbrough, 552 U.S. 85, 128 S.Ct. 558 (2007), that a district judge must include the Guidelines range in the array of factors warranting consideration, even if the Commission did not use an empirical approach in developing the sentences for the particular offense. Further, in Kimbrough, the Supreme Court reaffirmed Congress's ability to directly mandate Sentencing Guidelines to the Commission:

> The Commission not only developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence reports, but it also modified and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with Congressional instructions, and the like.

Kimbrough, 552 U.S. at 96.  The Supreme Court thus left undisturbed the bedrock principle that when Congress directs "sentencing practices in express terms," those congressionally authorized instructions provide the sentencing framework.  See Id. at 103.

4

1    In Kimbrough, the crack cocaine guidelines were problematic

2  because the Sentencing Commission had set them without taking

3  into account empirical data and without explicit direction from

4  Congress.  Id. at 96, 102-103, 109-110.  Unlike the crack cocaine

5  guidelines at issue in Kimbrough, Congress has expressly spoken

6  regarding the appropriate sentences in child pornography cases,

7  and Congress's view is directly reflected in the child

8  pornography guidelines.  Thus even assuming that guideline

9  § 2G2.2 was based entirely on congressional directive–an

10  incorrect assumption-that is not a flaw, but rather a direct

11  result of Congress's power, derived from the Constitution.  See

12  United States v. Kirchof, 505 F.3d 409, 414 (6th Cir. 2007).  See

13  also United States v. McNerney, 636 F.3d 772 (6th Cir. March 1,

14  2011) ("[I]t is unquestionably Congress' constitutional

15  prerogative to issue sentencing directives such as the sentencing

16  enhancements for quantity of images at issue in this case.");

17  United States v. Evans, 333 U.S. 483, 486 (1948) ("In our system,

18  so far as at least concerns the federal powers, defining crimes

19  and fixing penalties are legislative . . . functions.")

20    Defendant's Kimbrough-based policy critique of § 2G2.2 has

21  been addressed in detail by the Ninth Circuit in United States v.

22  Henderson, 649 F.3d 955 (9th Cir. 2011).  The majority opinion

23  recites the history of Congressional involvement in the

24  Guidelines cited by defendant in his sentencing position.  A

25  concurrence by Judge Berzon argues why, from a policy standpoint,

26  district courts might be skeptical of § 2G2.2.  A concurrence in

27  the result by Judge Callahan explains why § 2G2.2 is not flawed.

28    The central holding of the majority opinion accords with the

government's position:  "Sentencing courts must continue to consider the applicable Guidelines range as the starting point and the initial benchmark." Id. at 963 (emphasis added).   The court "emphasized" both that "district courts are not obligated to vary from the . . . Guidelines on policy grounds if they do not have, in fact, a policy disagreement with them" and that "we do not hold that application of § 2G2.2 will always result in an unreasonable sentence." Id. at 964.  Nevertheless, district courts have discretion to vary from § 2G2.2's range from a policy standpoint if it concludes that an in-Guidelines sentence does not accord with the § 3553(a) factors.  Id.

Empirically based or not, the Guidelines remain the Guidelines.  It is for the Sentencing Commission to alter or amend them.  Accordingly, courts should not reject a Guidelines provision as "unreasonable" or "irrational" simply because it is not based on empirical data and even if it leads to some disparities at sentencing.  The advisory Guidelines sentencing range remains a factor for district courts to consider in arriving upon a sentence.  See, e.g., United States v. Miller, 665 F.3d 114 (5th Cir. 2011)(rejecting empirical policy arguments like defendant's, that the guidelines are not valid because they are not based on empirical evidence.)

Further, the government respectfully directs the Court to a February 14, 2012 letter addressed to the United States Sentencing Commission from Lamar Smith, Chairman of the House Judiciary Committee, Charles E. Grassley, Ranking Member of the Senate Judiciary Committee, and F. James Sensenbrenner Jr., Chairman of the Subcommittee on Crime, Terrorism, and Homeland

Security, attached hereto as Exhibit A.  Specifically addressing the high rate of variance from the Sentencing Guidelines in child pornography cases, the letter states:

> We are concerned that the disturbing departure rate ... demonstrates a misunderstanding of the seriousness of child pornography crimes – including possession – and Congress' intent regarding punishment of these offenses.  The imposition of significantly reduced sentences for the possession of child pornography ignores ample evidence demonstrating the ongoing, continuous harm to the victim, the correlation between possession and child sexual abuse, and the fact that the demand for child pornography images by possessors feeds the production and therefore the sexual exploitation of children...

Exh. A. at 3.

Although defendant cites a number of cases criticizing the Guidelines, there are plenty of courts from across the country that have upheld guideline sentences for child pornography cases even after the guidelines have been under attack:

> See eg.: United States v. Clogston, 662 F.3d 558 (1st Cir. 2011); United States  v. Magner, 2012 WL 206013 (2d Cir. Jan. 25, 2012) (unpubl); United States v. Aumais,656 F.3d 147 (2d Cir. 2011); United States v. Rosenberg, 423 Fed.App'x 54 (2d Cir. 2011); United States v. Davis, 402 Fed.App'x 607 (2d Cir. 2010); United States v. Swackhammer, 400 Fed.App'x. 615 (2d Cir. 2010); United States v. Davis, 402 Fed.App'x 607 (2d Cir. 2010); United States v. Reap, 391 Fed.App'x 99 (2d Cir. 2010); United States v. Hardy, 2011 WL 6093410 (3d Cir. Dec. 8, 2011) (unpubl); United States v. Elston, 423 Fed.App'x 190 (3d Cir. 2011); United States v. Stabile, 633 F.3d 219 (3d Cir., 2011); United States v. McMickens, 373 Fed.App'x 226 (3d Cir. 2010); United States v. Humanik, 415 Fed.App'x 404 (3d Cir.  2011); United States v. Blakeslee, 423 Fed.App'x (3d Cir. 2011); United States v. Leitenberger, 420 Fed.App'x 188 (3d Cir. 2011); United States v. Tanzola, 416 Fed.App'x 197 (3d Cir. 2011); United States v. Rudow, 373 Fed.App'x 298 (3d Cir. 2010); United States v. Boczkowski, 378 Fed.App'x 126 (3d Cir. 2010); United States v. Eyster, 386 Fed.App'x 180 (3d Cir. 2010); United States v. Bryner, 392 Fed.App'x 68 (3d Cir. 2010); United States v. Myers, 364 Fed.App'x (3d Cir. 2010); United States v. Strieper, 2012 WL 208043 (4th Cir. Jan. 23, 2012) United States v. Burdette, 2011 WL 6275943 (4th Cir. Dec. 16, 2011) (unpubl);

United States v. Hamby, 2011 WL 2693963 (W.D. Va. July
12, 2011); United States v. Garcia, 402 Fed. App'x 768
(4th Cir. 2010); United States v. Hall, 377 Fed.App'x
300 (4th Cir. 2010); United States v. McKee, 2010 WL
1664081 (D.Md. April 21, 2010); United States v.
Goluba, 2012 WL 560706 (5th Cir. Feb. 22, 2012); United
States v. Hendricks, 424 Fed. App'x 281 (5th Cir.
2011); United States v. Sadowski, 422 Fed. App'x 379
(5th Cir. 2011); United States v. Young, 408 Fed. App'x
838 (5th Cir. 2011); United States v. Abbate, 435
Fed.App'x 326 (5th Cir. 2011) (upward variance upheld
in possession case); United States v. Cunningham, 2012
WL 593110 (6th Cir. Feb. 24, 2012); United States v.
Evers, 2012 WL 413810 (6th Cir. Feb. 10, 2012); United
States v. Bolton, 2012 WL 141958 (6th Cir. Jan. 19,
2012); United States v. Hill, 2012 WL 516191 (6th Cir.
Feb. 17, 2012) (unpubl); United States v. Reilly, 662
F.3d 754 (6th Cir. 2011); United States v. Overmyer,
663 F.3d 862 (6th Cir. 2011); United States v. Brooks,
628 F.3d 791 (6th Cir. 2011); United States v. Myers,
442 Fed.App'x 220 (6th Cir. 2011); United States v.
Gilley, 433 Fed.App'x 447 (6th Cir. 2011); United
States v. Lamb, 431 Fed.App'x 421 (6th Cir. 2011);
United States v. Staten, 435 Fed.App'x 422 (6th Cir.
2011); United States v. Dattiilio, 442 Fed.App'x (6th
Cir. 2011);  United States v. Hardin, 437 Fed.App'x
(6th Cir. 2011); United States v. Dudeck, 657 F.3d 424
(6th Cir. 2011);United States v. Bailey, 420 Fed.App'x
559 (6th Cir. 2011); United States v. Warner, 399
Fed.App'x 88 (6th Cir. 2010); United States v.
McNerney, 636 F.3d 772 (6th Cir. 2011); United States
v. Warner, 399 Fed.App'x 88 (6th Cir. 2010); United
States v. Garthus, 652 F.3d 715 (7th Cir. 2011); United
States v. Armes, 415 Fed.App'x 729 (7th Cir. 2011);
United States v. Mantanes, 632 F.3d 372 (7th Cir.
2011); United States v. Brown, 634 F.3d 954 (7th Cir.
2011); United States v. Snodgrass, 635 F.3d 324 (7th
Cir. 2011); United States v. Allen, 413 Fed.App'x 893
(7th Cir. 2011); United States v. Coopman, 602 F.3d 814
(7th Cir. 2010); United States v. Maulding, 627 F.3d
285 (7th Cir. 2010); United States v. Rodgers, 610 F.3d
975 (7th Cir. 2010); United States v. Nissen, 666 F.3d
486 (8th Cir. 2012); United States v. Burman, 666 F.3d
1113 (8th Cir. 2012); United States v. Dolehide, 663
F.3d 343 (8th Cir. 2011); United States v. Schaefer,
2011 WL 1807387 (N.D.Iowa May 11, 2011); United States
v. Webb, 2011 WL 1930707 (D.N.D. May 20, 2011); United
States v. Hubbard, 414 Fed.App'x 893 (8th Cir. 2011);
United States v. Koch, 625 F.3d 470 (8th Cir. 2010);
United States v. Bauer, 626 F.3d 1004 (8th Cir. 2010);
United States v. Acosta, 619 F.3d 956 (8th Cir. 2010);
United States v. Sampson, 606 F.3d 505 (8th Cir. 2010);
United States v. Estey, 595 F.3d 836 (8th Cir. 2010);
United States v. Shuler, 598 F.3d 444 (8th Cir. 2010);
United States v. Grigsby, 2012 WL 35587 (9th Cir. Jan.

9, 2012) (unpubl); United States v. Shigley, 2011 WL 4588916 (9th Cir. Oct. 5, 2011) (unpubl); United States v. Maier, 639 F.3d 927 (9th Cir. 2011); United States v. Aguirre, 2011 WL 3629236 (9th Cir. Aug. 18, 2011); United States v. Alfaro, 446 Fed.App'x 840 (9th Cir. 2011); United States v. Psick, 434 Fed.App'x 646 (9th Cir. 2011); United States v. Aglony, 421 Fed.App'x 756 (9th Cir. 2011); United States v. Anthony, 421 Fed.App'x 674 (9th Cir. 2011); United States v. Blodgett, 412 Fed.App'x 935 (9th Cir. 2011); United States v. Richards, 414 Fed.App'x 911 (9th Cir. 2011); United States v. Carlson, 395 Fed.App'x 413 (9th Cir. 2010); United States v. Blinkinsop, 606 F.3d 1110 (9th Cir. 2010); United States v. Croucher, 2012 WL 256027 (10th Cir. Jan. 30, 2012) (unpubl); United States v. Nghiem, 432 Fed.App'x 735 (10th Cir. 2011); United States v. Ilgen, 417 Fed.App'x 728 (10th Cir. 2011); United States v. Regan, 627 F.3d 1348 (10th Cir. 2010); United States v. Goldberg, 295 F.3d 1133 (10th Cir. 2002); United States v. McGarrity, 2012 WL 370104 (11th Cir. Feb. 6, 2012); United States v. Reaid, 2012 WL 309316 (11th Cir. Feb. 2, 2012) (unpubl); United States v. Ballard, 2011 WL 6223122 (11th Cir. Dec. 15, 2011) (unpubl); United States v. Nelson, 2011 WL 4584788 (11th Cir. Oct. 5, 2011) (unpubl); United States v. Flowers, 438 Fed.App'x 831(11th Cir. 2011); United States v. McDaniel, 631 F.3d 1204 (11th Cir. 2011); United States v. Stearman, 2010 WL 5297165 (M.D. Fla. Dec. 20, 2010); United States v. Wayerski, 624 F.3d 1342 (11th Cir. 2010); United States v. Turner, 626 F.3d 566 (11th Cir. 2010); and United States v. Alfaro-Moncada, 607 F.3d 720 (11th Cir. 2010).

Defendant's complaints regarding the Guidelines as a starting point for the Court's consideration of the appropriate sentence in this case fails.  With respect to the Section 3553(a) factors, the government has already addressed the serious nature of defendant's crime, and why a significant punishment, and will not repeat those arguments here.

9

## C.   <u>Comparative Sentencing</u>

In support of his argument that the Guidelines are too high, defendant cites statistics indicating that federal judges increasingly depart downward in child pornography cases.  Def. Pos. at 4-5.  Citing cases criticizing the Guidelines as being too high in the "mine run" child pornography case, defendant argues that because courts in other cases have departed from the guidelines, he should be sentenced to no more than 60 months.  Def. Pos. at 16, 24.

The government agrees with defendant that the Court may look to co-defendant and national sentences in determining an appropriate sentence.  However, defendant has failed to address how such a comparison shows a disparity warranting a 60-month sentence.  He does not point to any particular sentence received by any other defendant, in this case or any other case.  He has not identified a single case where a defendant received a 60-month sentence, let alone addressed how the facts in such a case are similar to the facts his case.

Regarding defendant's generalized argument that "national disparity"  warrants a 60-month sentence, the government strenuously disagrees with defendant's characterization of his crime as a "mine run" child pornography offense.  Defendant did not simply download child pornography from anonymous Internet sites.  Rather, as a member of the Lost Boy message board, defendant was deeply embedded in the online community of men who collect and trade child pornography.  Participation in this group

10

resulted in the collection of many thousands of images of child pornography for the group to share, normalized the sexualization of children for all of its members, and encouraged the molestation of children. Defendant himself amassed a personal collection of thousands of images and videos of child pornography, and has admitted to trading these images via the Internet outside of Lost Boy.  Perhaps most crucial, however, is that unlike the "average" case, here the government has evidence that defendant took steps to act on his sexual interest in children, forcibly fondling and performing oral sex on two prepubescent boys.  PSR ¶¶ 85-86.  Defendant's crime is nowhere near the "average" child pornography offense.

With respect to the co-defendants in this case in particular, the government has attempted to recommend sentences that appropriately address the facts involved in each individual case, and that are also appropriate in comparison with one another.  In making this comparison, the government considered factors such criminal history, level of participation in the message board, the size and nature of their child pornography collections, whether defendants were trading child pornography outside Lost Boy, cooperation with the government, evidence that defendants acted on their sexual interest in ways beyond collecting and trading child pornography.  Addressing each of these factors for each of the 15 defendants who have been convicted thus far would be an extremely lengthy endeavor.  The government invites the defendant to identify co-defendants whose sentences have

11

1  caused the alleged sentencing disparity warranting a 60-
2  month sentence, and the government will attempt to address
3  his concerns.

4  **D.**   **A 5-Level Enhancement for Distribution Should Apply**

5       Defendant contests that 5-level enhancement for
6  distribution in exchange for a "thing of value," pursuant to
7  U.S.S.G. §2G2.2(b)(3)(B).  Def. Pos. at 18.  Defendant has
8  already agreed to the imposition of this 5-level enhancement
9  pursuant to paragraph 13 of the Plea Agreement.

10      Further, the enhancement clearly applies based on
11  Sudduth's own admission that he posted three images of child
12  pornography that included penetration as a condition of Lost
13  Boy membership.  PSR ¶ 44.  Sudduth posted this child
14  pornography in order to receive a thing of value –
15  membership in Lost Boy and access to the large shared
16  library of child pornography.  The application notes
17  regarding U.S.S.G. §2G2.2(b)(3)(B) expressly state that
18  distribution of child pornography in exchange for other
19  child pornography constitutes "distribution in exchange for
20  a thing of value" for purposes of this enhancement.

21      Defendant mistakenly states that Lost Boy child
22  pornography group relied on a peer-to-peer file sharing
23  program known as "Gigatribe" to trade child pornography.
24  This is not the case; although some members did elect to
25  trade child pornography with others via Gigatribe, Lost Boy
26  members shared child pornography with each other by actively
27  posting child pornography, either by posting it to the Lost
28

12

Boy message board, to the Lost Boy FTP site, or to the Lost
Boy Rapidshare account.

Sudduth has admitted, however, that he used Gigatribe
software to receive, store, and share child pornography with
others in the network.  PSR ¶ 44.  This behavior is relevant
conduct for purposes of the Guidelines, and further supports
the distribution-for-a-thing-of-value enhancement.

Defendant argues that distribution via Gigatribe is
insufficient to support the enhancement, claiming that
"there is no evidence that he intended some person to
receive the image and that he actively transmitted the
material to at least one person who received it."  Def. Pos.
at 20.

First, defendant is incorrect about the passive nature
of the Gigatribe file-sharing network.  Gigatribe is a
sophisticated peer-to-peer program, designed to prevent
accidental sharing of files with law enforcement.  A
Gigatribe user must affirmatively agree to share files, must
select the folders he wishes to be "sharing" folders, and
must populate those folders with the files he wishes to
share.  Even then, the files are not generally made
available to all Gigatribe users.  Rather, Gigatribe
requires that users establish a "friends" network with other
Gigatribe users, and files are only made available to other
Gigatribe users within that private network, not to all
Gigatribe users as a whole.

Further, defendant has admitted that he knew that he
was sharing files with others.  He specifically admitted

13

that when he obtained child pornography files, he
deliberately placed them in a folder where other Gigatribe
users could access them.  PSR ¶ 44.  Contrary to defendant's
argument, this constitutes a purposeful act of distribution.
"One can distribute items by delivery to the recipient or by
enabling the recipient to acquire the items after placement
in an agreed-upon location with common access privileges.
He who places an open box of treats in a common area of an
office is rarely surprised when some are taken."  United
States v. Burman, 666 F.3d 1113, 1118 (8th Cir.
2012)(upholding the "distribution for a thing of value"
enhancement where defendant distributed child pornography
via Gigatribe).

     In support of his argument that the "distribution-for-
a-thing-of-value" enhancement is not appropriate for file-
sharing programs where a defendant may download child
pornography, regardless of whether he shares child
pornography himself, defendant cites a concurring opinion in
United States v. Bastian, 603 F.3d 460, 467 (8th Cir. 2010).
Def. Pos. at 20.  Defendant fails to disclose, however, that
the majority opinion in that case approved the application
of this enhancement in peer-to-peer file sharing cases where
the defendant understood that he was sharing his files:
"This court has applied the enhancement in cases where the
defendant received and shared child pornography files
through peer-to-peer file-sharing networks."  Bastian, 603
F.3d at 466, citing United States v. Ultsch, 578 F.3d 827,
829-30 (8th Cir.2009); United States v. Stults, 575 F.3d

14

834, 849 (8th Cir.2009); <u>United States v. Griffin</u>, 482 F.3d 1008, 1012-13 (8th Cir.2007).  The Court went on to say that "Whether a defendant qualifies for the five-level enhancement must be decided on a case-by-case basis ... the government can meet its burden with direct evidence, such as an admission by the defendant that he knew he was using a file-sharing network, and could download files from others who could download files from him." <u>Bastian</u>, 603 F.3d at 466, citing <u>Stultz</u>, 575 F.3d at 849 and <u>Griffin</u>, 482 F.3d at 1013.

Although the Court in <u>Bastian</u> ultimately found that it did not need to decide whether the application of the 5-level "distribution for a thing of value" enhancement was appropriate under the specific facts of that case, it clearly approved of the application of this enhancement in cases such as this – where defendant has admitted to the use of a file-sharing program to trade child pornography with other users.

**E.    Defendant's Role in the Conspiracy**

Defendant argues for a 4-level minimal role adjustment pursuant to U.S.S.G. § 3B1.2(a) because he did not post child pornography to the Lost Boy message board.  Def. Pos. at 20.  Defendant claims that as the Lost Boy conspiracy could not exist without distribution of child pornography,

15

1  anyone who did not distribute child pornography should be

2  afforded a minimal role adjustment.  Def. Pos. at 21.[2]

3      The government agrees that Lost Boy would not have

4  succeeded as a criminal enterprise had everyone wished to

5  receive child pornography, but no one was willing to share

6  it.  However, it likewise would not have existed but for

7  members, like defendant, who created the demand for child

8  pornography to be shared.  Defendant pleaded guilty to

9  conspiracy to <u>advertise</u> child pornography, including

10 advertisements to <u>receive</u> child pornography.  On multiple

11 occasions, defendant advertised to receive child

12 pornography, asking other members to post child pornography.

13 See, e.g., PSR ¶¶ 36-39.

14     Further, the application note to U.S.S.G. § 3B1.2(a)

15 suggests that the "minimal participant" reduction should be

16 applied infrequently, and is generally appropriate only

17 where the defendant had a lack of knowledge or understanding

18 of the scope and structure of the enterprise and of the

19 activities of others.  This is not the case here; defendant

20 has admitted that he joined Lost Boy, knowing full well that

21 the purposes of the message board was to trade child

22 pornography.  Lost Boy was not a hierarchical structure,

23 with varying grades of membership and participation.

24 Rather, every member had access to the entire board, could

25 post messages, comment on images, and access the shared

26

27     [2]Defendant's argument also fundamentally misunderstands the
   nature of a "conspiracy," which is a crime that can be committed
28 even if the object of the conspiracy is never accomplished.

16

library of child pornography posted on the board, the FTP,
and the Rapidshare account.  The only exceptions were the
two board administrators, the three members of the
admissions committee, and the members invited to participate
in the Handbook Project.

Defendant clearly took advantage of the Lost Boy child
pornography library, downloading numerous child pornography
images from the Board.  Between the Lost Boy board,
Gigatribe, and other means, defendant amassed a collection
of over 5,000 images and 700 videos of child pornography.
PSR ¶ 41.  This does not evidence an individual with a
minimal interest in child pornography, or someone who spent
a minimal amount of time acting on that interest.  However,
the government concedes that defendant made fewer posts to
the message board that the average participant.  The
application of 2-level a minor role reduction, pursuant to
Section 3B1.2(b), may be appropriate.  However, defendant's
relative culpability in the Lost Boy board has already been
considered by the government in its sentencing
recommendation; the application of this 2-level reduction
does not change the government's 22-year sentencing
recommendation.

**F.   Defendant Is Not Entitled to a Downward Departure for
Potential Vulnerability to Abuse in Prison**

Defendant summarily claims that his "youth, naivete and
small stature" make him particularly vulnerable to abuse in
prison, especially given the nature of his offense.  Def.
Pos. at 21-22.  Defendant is correct that in United States

17

1   v. Parish, 308 F.3d 1032 (9th Cir. 2002), the Ninth Circuit
2   held that a district court has discretion to depart downward
3   when it finds a defendant susceptible to abuse in prison
4   because of a "combination" of factors: "his stature, his
5   demeanor, his naivete, [and] the nature of the offense."
6   Id. at 1031.  However, Parish simply says that a district
7   court may vary downward, not that it must.  See, e.g.,
8   United States v. Lara, 905 F.2d 599, 601-03 (2d Cir. 1990)
9   (downward departure not abuse of discretion due to
10  defendant's "diminutive size, immature appearance, and
11  bisexual orientation").  The Court should not depart
12  downward in this case.

13      In Paris, the district court made an "individualized
14  determination, taking into account the realities of what
15  this particular individual is likely to face in prison."
16  308 F.3d at 1032.  The district court relied in part on the
17  testimony of a witness who was a clinical psychologist and a
18  director of the sex-offender treatment unit of a state
19  prison in Montana.  Id. at 1028.  After hearing this
20  testimony, the district court explained that it departed
21  downward because of the defendant's stature, demeanor,
22  naivete, in combination with the nature of his offense.
23  Id.;.

24      Defendant has made no individualized showing, here,
25  that he is particularly vulnerable to abuse.  Being a sex
26  offender does not categorically provides a basis for a
27  guideline variance based on susceptibility to abuse in
28  prison.  The BOP "maintains a comprehensive sex offender

18

management strategy, implemented to effectively manage its
population of sex offenders, and manage the risks posed by
these offenders to the general public."  Legal Resource
Guide to the Federal Bureau of Prisons 27-29, at
http://www.bop.gov/news/PDFs/legal_guide.pdf.  Indeed, a
"specialized sex offender program is offered in each BOP
region.  Inmates with a history of sexual offenses may be
designated to the Sex Offender Management Program (SOMP), at
one of six institutions."  Id. at 29.  Moreover, defendant
has presented no evidence that other inmates would know the
nature of his crime, unless he chooses to tell them.

Defendant has evidenced no particular vulnerability to
victimization.  To the contrary, he himself has three
juvenile convictions for battery.  PSR ¶¶ 73-78.  Further,
due to the mandatory minimum sentence, the Court may not
depart below 15 years incarceration.  By then, defendant
will be well into his 30s.  His "youth, naivete, and
stature" will no longer be factors.  Although the Court can
"consider the nature of the offense in combination with
other factors increasing the susceptibility to abuse,"
Parish, 308 F.3d at 1032, the Court should decline to reach
a result in this case.

## G.   **Juvenile Adjudications**

Defendant has a criminal history category of III, based
upon three juvenile adjudications between the age of 12 and
15.  The Court has the authority to find that defendant's
criminal history is overstated.  It is true that defendant's
convictions occurred when he was very young.  However, they

19

accurately establish a continuous history of criminal
violations from the age of 12; he had criminal convictions
at 12, 13, and 15, and joined the Lost Boy board at 19.
During this same time period, defendant molested two young
boys.  Without any discussion or explanation of these facts,
defendant has simply not established that his criminal
history is overstated.

**H.   Conclusion**

Based on the reasons set forth above, and in the
government's sentencing position, the government continues
to recommend a sentence of 22 years incarceration.