1           UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3                WESTERN DIVISION

4                     ---

5      HONORABLE VALERIE BAKER FAIRBANK, JUDGE PRESIDING

6                     ---

7

8   UNITED STATES OF AMERICA,    )
                                 )
9              Plaintiff,        )
                                 )
10                               )
11       vs.                     ) NO:  CR 09-68-VBF-6
                                 )
12   RYAN HAWTHORNE,             )
                                 )
13             Defendant.        )
    _____)

14

15

16

    **REPORTER'S PARTIALLY SEALED TRANSCRIPT OF PROCEEDINGS**
17                **(CHANGE OF PLEA)**

18            **Los Angeles, California**

19          **Friday, August 12, 2011**

20

21

22                    KATHERINE M. STRIDE, RPR, CSR
                      Official Court Reporter
23                    Roybal Federal Building
                      255 E. Temple Street, Rm. 181-B
24                    Los Angeles, California  90012

25                    (213)894-2187

1

2    **APPEARANCES:**

3


4    In behalf of the Government:

5                    YVONNE GARCIA
                    ASSISTANT UNITED STATES ATTORNEY
6                    Criminal Division, United States Courthouse
                    312 North Spring Street
7                    Los Angeles, California  90012
                    (213)894-2434
8

9

10

11

12

13   In behalf of the Defendant:

14                   LAW OFFICES OF CHARLES PEREYRA-SUAREZ
                    BY:  CHARLES PEREYRA-SUAREZ
15                   445 S. Figueroa Street, Suite 2700
                    Los Angeles, CA  90071
16                   (213)623-5923

17

18

19

20

21

22

23

24

25

1        **LOS ANGELES, CALIFORNIA; FRIDAY AUGUST 12, 2012;**

2                          **1:42 P.M.**

3

4            THE CLERK:  Please remain seated and come to

5    order.  This United States District Court for the

6    Central District of California is again in session, the

7    Honorable Valerie Baker Fairbank, United States District

8    Judge presiding.

9            THE COURT:  Good afternoon.

10           Would the Clerk please calling the next case.

11           THE CLERK:  Calling Item No. 3, CR 09-68-VBF-6,

12   United States of America versus Ryan Hawthorne.

13           Counsel, please state your appearance.

14           MS. GARCIA:  Good afternoon, Your Honor.

15   Yvonne Garcia on behalf of the Government.

16           THE COURT:  Ms. Garcia.

17           MR. PEREYRA-SUAREZ:  And good afternoon,

18   Your Honor.  Charles Pereyra Suarez representing Ryan

19   Hawthorne.  He is present in custody.

20           THE COURT:  Good afternoon, Counsel, and good

21   afternoon, Mr. Ryan Hawthorne.

22           This is a change of plea hearing on notice for

23   today.

24           Mr. Pereyra-Suarez, do you and your client have

25   a copy of the plea agreement before you?

1          MR. PEREYRA-SUAREZ:  Yes, we do, Your Honor.

2              **(WHEREUPON, PAGE 4, LINE 2, THROUGH**

3              **PAGE 11, LINE 1, WAS PLACED UNDER SEAL PER**

4              **ORDER OF THE COURT.)**

1

2      THE COURT:  Some of -- some of the detail -- the factual

3      detail is not necessary to support a factual basis; and,

4      therefore, doesn't need to be read.  I didn't examine

5      the attorneys for why they agreed to that, but one of

6      the reasons was it's -- it's an awful lot of work for

7      the Court Reporter, and I think you could call your

8      office, Ms. Garcia, and verify what I said with one of

9      the AUSA's.  Ms. Blanch seems to know a lot of people.

10     So I wouldn't be sealing, I wouldn't be cutting back on

11     the factual basis because I would ask:  "Mr. Hawthorne,

12     have you read the factual basis and is it all true and

13     correct?"  And then you can proceed to read the parts

14     that -- that are necessary to show the -- the elements.

15             Is that something --

16             MR. PEREYRA-SUAREZ:  Your Honor, I -- I'm

17     familiar with other judges doing exactly that,

18     particularly, where the factual basis is lengthy.

19     Mr. Hawthorne is prepared to tell the Court on the

20     record that he has read the entire factual basis and

21     that he's in agreement with it and that way the Court

22     Reporter doesn't have to track every page of this

23     factual basis, roughly four pages.  That would be my

24     suggestion.  It's what has been done in other cases

25     where I've been counsel, and my client is agreeable to

```
1    that procedure.  Again, I would object to any process

2    that unseals the actual plea agreement.  That plea

3    agreement is under seal now, and right now we're talking

4    about the transcript of these proceedings.  So the

5    procedure suggested by the Court is acceptable by

6    Mr. Hawthorne and me.

7              THE COURT:  And -- and with respect to the

8    First Amendment rights, I believe I raised the

9    following, that the Second Superseding Indictment to

10   which Mr. Hawthorne would plead guilty to Count 1, as I

11   read the plea agreement, is not sealed; is that -- so

12   I'm having -- so the public's right to know the

13   First Amendment rights are not impaired.

14             MS. GARCIA:  Certainly, Your Honor, and I do

15   believe that the alternative the Court has proposed is

16   acceptable and would work for me, for you to inquire of

17   Mr. Hawthorne that he's read thoroughly the factual

18   basis, agrees with it, says he did those things, and I'd

19   be prepared -- I'd be happy to read a more sanitized

20   briefer version of just the essential facts.

21             THE COURT:  Do you need any extra time to

22   prepare that redacted version?

23             MS. GARCIA:  I -- I think a few minutes just to

24   make sure that, perhaps, we're on the same page.

25             THE COURT:  And maybe you can confer.
```

1          MR. PEREYRA-SUAREZ:  Again, I'm not sure we

2     need a redacted version if -- if he's saying, "I've read

3     it.  I agree with everything that's happened," and it's

4     just part of the record even if it's under seal, I don't

5     know why we need to redact something --

6          THE COURT:  I don't know if it meets the

7     requirements of putting aside the constitution -- meets

8     the requirements of Rule 32 -- no, excuse me -- Rule 11

9     of the Federal Rules of Criminal Procedure.  I'll give

10    counsel time to look at that.

11          On second thought, reading through Rule 11, it

12    would seem to be adequate if there is a reference to the

13    factual basis and inquiry by the Prosecutor and the

14    Court if everything said in the factual basis is true

15    and correct and whether that the factual basis says the

16    Defendant did everything with respect to the actions and

17    conduct and intent as set forth in the factual basis, if

18    all that is true and correct.

19          MS. GARCIA:  On the -- on the face of the rule,

20    Your Honor, that does appear to be sufficient, and if

21    the Court wishes to move forward that way, then we can.

22          MR. PEREYRA-SUAREZ:  Your Honor, I agree that

23    it's sufficient and it's consistent with the practice

24    I've experienced in other cases that are similar.

25          THE COURT:  Mr. Hawthorne, do you agree to that

1    practice, that instead of reading the four-page

2    single-spaced factual basis, the Court would refer you

3    to the factual basis in the plea agreement, ask you if

4    you understand what is said in the factual basis, and

5    ask you whether everything said about you, about your

6    conduct and intent is true and correct?

7            THE DEFENDANT:  Yes, I agree, Your Honor.

8            THE COURT:  Would you waive or give up the

9    right to have the factual basis, if there is such a

10   right, waived?

11           MR. PEREYRA-SUAREZ:  Is he waiving the right to

12   have it read; is that what you're saying?

13           THE COURT:  Correct.

14           THE DEFENDANT:  Yes, Your Honor, I do.

15           THE COURT:  Any questions?

16           MS. GARCIA:  No, Your Honor, but I would ask

17   that, once the Defendant is placed under oath, that he

18   be asked again about the factual basis.

19           THE COURT:  Oh, sure.  I haven't gone through

20   this.

21           MS. GARCIA:  Yes.

22           THE COURT:  And the purpose of this hearing --

23   I would note and tell me if you disagree -- is, to a

24   very large extent, to make sure that the Defendant,

25   Mr. Hawthorne, it's a hearing for him to make sure that

1    he understands his rights, understands the charges,

2    understands the consequences of a plea.  That's --

3    that's the -- under Rule 11, that's what we're doing

4    here, and I think what we've decided is consistent with

5    that.

6              MS. GARCIA:  Thank you, Your Honor.

7              THE COURT:  Mr. Pereyra-Suarez, anything else

8    to add before we get started?

9              MR. PEREYRA-SUAREZ:  No, I think the Court is

10   already aware that we're going to be back in this

11   courtroom on or about August 22nd because of the Rule 20

12   paperwork that got delayed.

13             THE COURT:  I'm sorry.  I apologize.

14             MR. PEREYRA-SUAREZ:  I understand, Your Honor,

15   that we're going to do the change of plea for the

16   California case today.  There's also a South Carolina

17   Indictment, and there have been delays of,

18   approximately, four months in getting the Rule 20

19   paperwork completed, and Mr. Hawthorne cannot be

20   arraigned on that Rule 20 paperwork until my

21   understanding is August 22nd.  My understanding is the

22   Government is going to file something with the Court

23   indicating that this case would come before this Court

24   once the Rule 20 paperwork arrives and Mr. Hawthorne is

25   arraigned on that rule -- the South Carolina matter.  So

1    my understanding is this is going to be a two-part

2    procedure.  We're going to have the change of plea today

3    to the California case and that we'll need to come back

4    on or about August 22nd for the South Carolina case.

5            THE COURT:  And does the Government agree?

6            MS. GARCIA:  Yes, Your Honor, the August 22nd

7    date would be the date that we're able to get before the

8    magistrate judge for PIA so Mr. Hawthorne can be

9    arraigned on the South Carolina case.  There was a delay

10   on the part of the South Carolina District Court

11   transferring the case here.

12           THE COURT:  I understand from -- from the

13   papers you filed that that's the case.

14           I did, as you know, read in the plea agreement

15   that the Defendant agrees to plead guilty to Count 1 of

16   the Second Superseding Indictment in the California

17   case --

18           MR. PEREYRA-SUAREZ:  Correct.

19           THE COURT:  -- 09-68, and also to plead guilty

20   to Count 1 of the Indictment in the South Carolina Court

21   Case, No. 1069, the South Carolina case, which was filed

22   according to the plea agreement, in the District of

23   South Carolina on October 5th, 2010, and transferred to

24   this district for a guilty plea pursuant to Rule 20.

25           Having read that, I -- I had my Clerk obtain a

1    copy of the Indictment, Count 1 and 2 issued in the

2    District Court of the United States for the District of

3    South Carolina, Rock Hill Division.  It has a filing

4    date of October 5th, 2010.

5           Counsel, I seek your expertise in criminal

6    procedure, if it's -- if it was correct and acceptable,

7    I would be prepared to arraign Mr. Hawthorne today on

8    this District of South Carolina Indictment and take the

9    plea on both the California and the South Carolina

10   Indictment, if that were procedurally proper.

11          MS. GARCIA:  Your Honor, I did inquire about

12   that possibility with the person in the U.S. Attorney's

13   Office who deals with the out-of-district Rule 20

14   transfers.  My understanding and based on her

15   conversations with the District Court Clerk's Office

16   that case from South Carolina while it has been

17   officially transferred to the Central District of

18   California, has not yet been assigned to a district

19   judge.  So, technically, I don't believe that Your Honor

20   can arraign him because the case is not technically in

21   Your Honor's court yet.

22          THE COURT:  So there are some steps, he has to

23   be arraigned and a judge has to be assigned and then --

24          MS. GARCIA:  Yes.

25          THE COURT:  -- then -- and then how is it sent

1    here as a related case?

2            MS. GARCIA:  The -- the Government will be

3    filing a notice of related case in the new case

4    number -- Central District case number that has been

5    assigned to the South Carolina case.  That paperwork

6    will then be processed so that, when Mr. Hawthorne is

7    arraigned in front of a magistrate judge, the case will

8    then be assigned to this Court.  That's my

9    understanding.  Once that is done, we can coordinate

10   with the Court to set a new change of plea date for that

11   case.

12           THE COURT:  Any objection to that?

13           MR. PEREYRA-SUAREZ:  You know, I don't have an

14   objection to that, Your Honor.  The alternative

15   obviously would be to have everything done at once on or

16   about August 22nd.  I think the concern, certainly, on

17   the part of the Government and your Court Clerk, was

18   that we get this done before the status conference

19   scheduled for Monday, August 15th.  We could do it both

20   ways, but I think this way does make sense unless the

21   Court has a problem doing it in two separate

22   proceedings.

23           THE COURT:  No, that's fine.  Then if I may

24   proceed.

25           Mr. Hawthorne, please let me know if you have

1    any difficulty hearing me or the attorneys.  I would ask

2    your attorney to confirm that his client, Mr. Hawthorne,

3    wants to plead guilty pursuant to a plea agreement filed

4    under seal?

5              MR. PEREYRA-SUAREZ:  Yes, Your Honor.

6              THE COURT:  The plea agreement will be

7    incorporated and made a part of this proceeding.

8              Mr. Hawthorne, before I accept your plea of

9    guilty, I must make sure that you are fully informed of

10   your rights and that you understand your rights and the

11   nature of this proceeding.  I'm going to ask you a

12   series of questions and tell you about certain rights.

13   If you don't understand one of my questions or any

14   statement that I make, please tell me, and I will stop

15   and make it clear for you.  Also, you may stop me at any

16   time to talk to your attorney.  Please let me know

17   whenever you would like to do that okay.

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  And I would ask the Clerk if you

20   have any difficulty hearing Mr. Hawthorne, be sure to

21   let us know.

22             Would the clerk please administer the oath to

23   Mr. Hawthorne.

24             THE CLERK:  Mr. Hawthorne, to the best of your

25   ability, please raise your right hand.

1          Do you solemnly swear that you will make true

2     answers to those questions that the Court will ask you

3     regarding your change of plea so help you God?

4          THE DEFENDANT:  I do, so help me God.

5          THE CLERK:  Thank you.

6          THE COURT:  Mr. Hawthorne, do you understand

7     that you are under oath?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And if you answer any of my

10    questions falsely, your answers may later be used

11    against you in another prosecution of perjury for making

12    a false statement; understood?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you understand that you have the

15    right to remain silent and not to answer any of my

16    questions?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you give up that right?

19         THE DEFENDANT:  I do.

20         THE COURT:  Does counsel join?

21         MR. PEREYRA-SUAREZ:  Yes, I do, Your Honor.

22         THE COURT:  Mr. Hawthorne, would you please

23    state your true and correct full name.

24         THE DEFENDANT:  My name is Ryan Curtis

25    Hawthorne.

1          THE COURT:  And how old are you, Mr. Hawthorne?

2          THE DEFENDANT:  Twenty-eight years old.

3          THE COURT:  And how many years of school have

4    you completed?

5          THE DEFENDANT:  Twelve full years of school.

6          THE COURT:  And have you been treated recently

7    for any mental illness or addiction to narcotics of any

8    kind?

9          MR. PEREYRA-SUAREZ:  May I have a moment,

10   Your Honor?

11         THE COURT:  Sure.

12              (Mr. Pereyra-Suarez and the Defendant

13              confer.)

14         MR. PEREYRA-SUAREZ:  Your Honor, the reason he

15   hesitated is he's been interviewed by a Dr. Whiting, who

16   is a psychiatrist, who will be preparing a report for

17   the court relating to sentencing issues.

18         THE COURT:  Okay.

19         MR. PEREYRA-SUAREZ:  And that's the extent of

20   his interaction with a mental health professional.

21         THE COURT:  Thank you.

22         Mr. Hawthorne, in order to confirm your

23   competency to proceed, I would ask you a few more

24   questions.

25              Are you under the influence of any drug,

1    medication, or alcoholic beverage?

2            THE DEFENDANT:  No, Your Honor.

3            THE COURT:  Have you had any drugs, medication,

4    or alcohol within the last three days?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  Do you suffer from any mental

7    condition or disability that would prevent you from

8    fully understanding the charges against you or the

9    consequences of your guilty plea?

10           THE DEFENDANT:  No, Your Honor.

11           THE COURT:  Is there any reason we should not

12   go forward today?

13           THE DEFENDANT:  No, Your Honor.

14           THE COURT:  Ms. -- Mr. Pereyra-Suarez, have you

15   talked to your client today about these proceedings?

16           MR. PEREYRA-SUAREZ:  I spoke with him today,

17   and I've spoken to him, I think, three times within the

18   last week about these proceedings.

19           THE COURT:  Thank you.  Do you have any reason

20   to believe that your client should not go forward with

21   his plea today?

22           MR. PEREYRA-SUAREZ:  No, Your Honor.

23           THE COURT:  Do you believe that your client is

24   in possession of his faculties and is competent to

25   proceed?

1          MR. PEREYRA-SUAREZ:  Yes, I do.

2          THE COURT:  Based on the statements of the

3    Defendant and his attorney and my observations, I find

4    that the Defendant is in full possession of his

5    faculties and is competent to proceed.

6          Sir, from reviewing the plea agreement, page 2,

7    paragraph 2-A, I understand that you agree at the

8    earliest opportunity requested by the California

9    U.S. Attorney's Office and provided by the Court appear

10   and plead guilty to Count 1 of the Second Superseding

11   Indictment in the case of U.S. vs. Hawthorne,

12   Case No. 09-68, the California case; is that true?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Looking at the Second Superseding

15   Indictment, do you have a copy of that?

16         MR. PEREYRA-SUAREZ:  He has it in front of him,

17   Your Honor.

18         THE COURT:  Thank you.

19         In Count 1, you are charged with child

20   exploitation enterprise in violation of Title 18,

21   United States Code, Section 2252A(g).  This is a felony.

22         Do you understand the charges?

23         THE DEFENDANT:  I do, Your Honor.

24         THE COURT:  Have you received a copy of the

25   Second Superseding Indictment?

1          THE DEFENDANT:  I have, Your Honor.

2          THE COURT:  You have a right to have the Second

3    Superseding Indictment, or Count 1, thereof, read to

4    you.

5          Would you like me to read it to you?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Do you give up that right?

8          THE DEFENDANT:  I do give up that right.

9          THE COURT:  You also have the following

10   constitutional rights that you will be giving up if you

11   plead guilty:  You have the right to plead not guilty to

12   any offense charged against you and to persist in that

13   plea.  You have the right to a speedy and public trial.

14   You have the right to a trial by jury.  At trial, you

15   would be presumed to be innocent, and the Government

16   would have to prove your guilt beyond a reasonable

17   doubt.  If both you and the Government give up the right

18   to a jury trial, you have the right to be tried by the

19   Court.  You have the right to the assistance of counsel

20   for your defense throughout the proceedings even if you

21   do not enter into a plea agreement.  If you cannot

22   afford counsel, the Court will appoint counsel for you

23   free of charge to assist you at trial and at every other

24   stage of the proceedings.  You have the right to

25   confront and cross-examine the witnesses against you;

1    that is, to see and hear all the witnesses and have them

2    questioned by your lawyer.  You have the right to have

3    witnesses subpoenaed and compelled to testify on your

4    behalf.  You have the right to testify yourself on your

5    own behalf.  You have the privilege against

6    self-incrimination; that is, you have the right not to

7    testify or to incriminate yourself in any way.  If you

8    went to trial and decided not to testify, that fact

9    cannot be used against you.  By pleading guilty, you are

10   giving up that right and you are incriminating yourself.

11   You have the right to appeal your conviction and your

12   sentence if you go to trial and you are convicted.

13           Mr. Hawthorne, has your lawyer advised you of

14   all of these rights?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  Do you understand all of them?

17           THE DEFENDANT:  I do.

18           THE COURT:  Do you have any questions about any

19   of them?

20           THE DEFENDANT:  No, Your Honor.

21           THE COURT:  Do you need any more time to talk

22   to your lawyer about your rights?

23           THE DEFENDANT:  Not at this time.

24           THE COURT:  Do you understand that, if your

25   plea is accepted, you will be incriminating yourself and

1    you will have just -- you will have waived or given up

2    your right to a trial and all of the other rights I just

3    described?

4              THE DEFENDANT:  I do.

5              THE COURT:  Do you give up those rights?

6              THE DEFENDANT:  I do, Your Honor.

7              THE COURT:  Does Defense Counsel -- or is

8    Defense Counsel satisfied that each of these waivers is

9    knowingly, voluntarily, and intelligently made?

10             MR. PEREYRA-SUAREZ:  Yes, I am, Your Honor.

11             THE COURT:  And you join and concur in each of

12   the waivers?

13             MR. PEREYRA-SUAREZ:  I do, Your Honor.

14             THE COURT:  Mr. Hawthorne, as I told you, you

15   are charged in Count 1 of the Second Superseding

16   Indictment with a violation of Title 18, United States

17   Code, Section 2252A(g), child exploitation enterprises.

18             Would you please listen carefully because I'm

19   going to ask the Assistant U.S. Attorney, Ms. Garcia, to

20   state the elements of the charge.

21             MS. GARCIA:  The elements of the charge are as

22   follows:  First, the Defendant knowingly advertised,

23   transported, shipped, received, solicited or possessed

24   child pornography; second, the advertisement,

25   transportation, shipment, receipt, solicitation, or

1    possession talk place on three or more separate

2    incidents; third, Defendant knew or had reason to know

3    that such advertisement, transportation, shipment,

4    receipt, or possession was transported in interstate or

5    foreign commerce by commuter; fourth, the advertisement,

6    transportation, shipment, receipt, or possession

7    involved more than one victim; and, fifth, the Defendant

8    committed these offenses in concert with three or more

9    other persons.

10           THE COURT:  Thank you.

11           Mr. Hawthorne, do you understand the nature of

12    the charges?

13           THE DEFENDANT:  I do, Your Honor.

14           THE COURT:  Have you discussed the charges and

15    the elements of the charges with your lawyer?

16           THE DEFENDANT:  I have.

17           THE COURT:  Do you have any questions?

18           THE DEFENDANT:  No, I do not at this time.

19           THE COURT:  Have you been -- have you been

20    advised of the penalties including the maximum

21    penalties?

22           THE DEFENDANT:  I have, Your Honor.

23           THE COURT:  I would ask the Assistant U.S.

24    Attorney to state the penalties including the maximum

25    and any mandatory minimum penalty.

1          MS. GARCIA:  The statutory maximum sentence

2     that the Court can impose for a violation of Title 18,

3     United States Code, Section 2252A, Subsection (g), is a

4     lifetime period of imprisonment, a lifetime period of

5     supervised release, a fine of $250,000 or twice the

6     gross gain or gross loss, whichever is greatest, and a

7     mandatory Special Assessment of $100.  The mandatory

8     minimum sentence that the Court must impose for a

9     violation of Title 18, United States Code Section,

10    2252A, Subsection (g), is 20-years imprisonment and a

11    five-year period of supervised release.

12         THE COURT:  Did you -- could you also describe

13    in more detail supervised release.

14         MS. GARCIA:  Certainly, Your Honor.  Supervised

15    release is a period of time following imprisonment

16    during which the Defendant will be subject to various

17    restrictions and requirements.  The Defendant

18    understands that, if he violates one or more of the

19    conditions of any supervised release imposed, the

20    Defendant may be returned to prison for all or part of

21    the term of supervised release authorized by statute for

22    the offense that resulted in the term of supervised

23    release, which could result in the Defendant serving a

24    total term of imprisonment greater than the statutory

25    maximum.

1          THE COURT:  With respect to the penalties, I

2     would refer counsel to -- both Mr. Pereyra-Suarez and

3     Ms. Garcia -- to the plea agreement, paragraph 10 and

4     11.  Paragraph 10 pertains to a violation of Title 18,

5     United States Code, Section 2252A(g); correct?

6          MS. GARCIA:  Yes, Your Honor.

7          THE COURT:  And that's the count that

8     Mr. Hawthorne is pleading to here?

9          MS. GARCIA:  Yes, Your Honor.

10         THE COURT:  In the California case?

11         MS. GARCIA:  Yes.

12         THE COURT:  Paragraph 11 refers to the

13    statutory maximum sentence that the Court can impose for

14    a violation of Title 18, United States Code,

15    Section 2251(a)(1).  Is --

16         MS. GARCIA:  And, Your Honor --

17         THE COURT:  -- this the subject of the

18    South Carolina Indictment?

19         MS. GARCIA:  Yes, it is, Your Honor, and I'd be

20    happy to read that out loud to advise the Defendant of

21    the totality of the circumstances of the entire plea

22    agreement.

23         THE COURT:  Yes, I think you should.

24         MR. PEREYRA-SUAREZ:  And I believe that refers

25    to the South Carolina Indictment.

1          THE COURT:  Right.

2          MS. GARCIA:  In reference to Title 18.

3    United States Code, Section 2251(a)(1), which is charged

4    in the South Carolina Indictment, the statutory maximum

5    sentence that the Court can impose is 30 years of

6    imprisonment, a lifetime period of supervised release, a

7    fine of $250,000 or twice the gross gain or gross loss

8    resulting from the offense, whichever is greatest, and a

9    mandatory Special Assessment of $100.  The mandatory

10   minimum sentence that the Court must impose for a

11   violation of Title 18, United States Code,

12   Section 2251, Subsection (a)(1), is five-years

13   imprisonment and a five-year period of supervised

14   release; therefore, in total, the maximum sentence for

15   all offenses to which the Defendant would be pleading

16   guilty, not just today, with respect to Count 1 of the

17   Second Superseding Indictment but also combined with the

18   count contemplated in the South Carolina case, would be

19   a lifetime period of imprisonment, a lifetime period of

20   supervised release, a fine of $500,000 or twice the

21   gross gain or gross loss, whichever is greatest, and a

22   mandatory Special Assessment of $200.

23          THE COURT:  So that -- it would be the maximum

24   sentence Mr. Hawthorne could -- which could be imposed

25   as to Mr. Hawthorne in these two cases, the California

1   and the South Carolina case?

2              MS. GARCIA:  That's correct, Your Honor.

3              THE COURT:  On the other hand, the -- the

4   sentence, in these two cases, could be concurrent; is

5   that true?

6              MS. GARCIA:  Yes.  That's up to the Court's

7   discretion.  What I just stated were the maximum, the

8   highest that the Court can go.

9              THE COURT:  Okay.

10             MR. PEREYRA-SUAREZ:  I agree, Your Honor, that

11  those could be concurrent.

12             THE COURT:  Or -- or consecutive, and that

13  would produce the maximum as articulated by Ms. Garcia.

14             MR. PEREYRA-SUAREZ:  Right, and I agree that

15  it's up to the Court's discretion.

16             THE COURT:  Do you understand that,

17  Mr. Hawthorne?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  You have any questions about what

20  we're saying or what I'm advising, please let me know.

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Mr. Hawthorne, do you understand

23  what the Prosecutor stated regarding the penalties in

24  this case?

25             THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  I'm sorry.  I think I may have cut

2     Ms. Garcia off.  Could you describe the nature of

3     supervised release.

4          MS. GARCIA:  I did read into the record

5     supervised release as it's described in paragraph 14 on

6     page 15 of the plea agreement, but there is one other

7     aspect of supervised release that I had not yet

8     mentioned, and that's found in paragraph 15 of the

9     agreement on the same page.

10          As a condition of supervised release, under

11     Title 18, United States Code, Section 3583,

12     Subsection (d), the Defendant will be required to

13     register as a sex offender.  The Defendant understands

14     that, independent of supervised release, he will be

15     subject to both federal and state registration

16     requirements for a possible maximum term of registration

17     up and including life.

18          The Defendant further understands that, under

19     Title 18, United States Code, Section 4042,

20     Subsection (c), notice will be provided to certain law

21     enforcement agencies upon his release from confinement

22     following conviction.

23          THE COURT:  Thank you.

24          Mr. Hawthorne, as the Prosecutor indicated, you

25     may be subject or you will be subject to supervised

1    release for a number of years after release from prison.

2         Have you discussed with your lawyer and do you

3    understand supervised release?

4         THE DEFENDANT:  I do, Your Honor.

5         THE COURT:  Do you understand that, if you are

6    sent to prison and you are placed on supervised release

7    following imprisonment and you violate one or more of

8    the conditions of supervised release, you may be

9    returned to prison for all or part of the term of

10   supervised release.

11        THE DEFENDANT:  I do, Your Honor.

12        THE COURT:  Do you understand, as the

13   Prosecutor indicated, that as a condition of supervised

14   release, pursuant to Title 18, 3583(d), you be required

15   to register as a sex offender?

16        THE DEFENDANT:  I do, Your Honor.

17        THE COURT:  Do you also understand that, if you

18   reside in California, you would be subject to the

19   registration requirements in California including

20   California Penal Code, Section 290?

21        THE DEFENDANT:  I do, Your Honor.

22        THE COURT:  I would direct your attention,

23   again, to the plea agreement, page 14, paragraph 13.

24   You should understand, Mr. Hawthorne, that you will be

25   required to pay full restitution to the victims of the

1   offense.

2          It states here that the Defendant agrees, in

3   return for the U.S. Attorney's compliance with its

4   obligation, that the amount of restitution is not

5   restricted to the amounts alleged in the account -- in

6   the count to which the Defendant is pleading guilty and

7   may include losses arising from counts dismissed and

8   charges not prosecuted pursuant to this agreement as

9   well as all relevant conduct in connection with these

10  counts and charges as pointed out in this paragraph,

11  that there are no agreements as to the amount of

12  restitution that may be owed to victims of Count 1 of

13  the Second Superseding Indictment in either the

14  California case or the South Carolina case; understood?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  I would also reiterate referring to

17  paragraph 15, that as a condition of supervised release

18  under Title 18, United States Code Section 3583(d), that

19  you will be required to register as a sex offender, and

20  you should understand that, independent of supervised

21  release, you'll be subject to federal and state

22  registration requirements for a possible maximum term of

23  registration up to and including life.

24          You should further understand as set forth in

25  paragraph 15 that, under Title 18, United States Code,

1    Section 4042, notice will be provided to certain law

2    enforcement agencies upon your release from confinement

3    following conviction; understood?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Referring to paragraph 16, it's

6    important that you understand that by pleading guilty

7    you may be giving up valuable government benefits and

8    valuable civic rights such the right to vote, the right

9    to possess a firearm, the right to hold public office,

10   the right to serve on a jury.  You should understand

11   that, once the Court accepts your plea, it will be a

12   federal felony for you to possess a firearm or

13   ammunition.  You should understand that the conviction

14   in this case may also subject you to various collateral

15   consequences including, but not limited to, revocation

16   of parole, probation, or supervised release in another

17   case, if there is another case, and supervision or

18   revocation of a professional license.  You should

19   understand that unanticipated collateral consequences

20   will not serve as grounds to withdraw your plea;

21   understood?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Do you understand that, if you are

24   presently on parole, probation, or supervised release in

25   some other case, this plea alone may be a basis for

1    revocation of that parole, probation, or supervised

2    release; and as a result, you may be returned to prison

3    on that other case if there is another case?

4              THE DEFENDANT:  Yes, I understand.

5              THE COURT:  Do you understand that, if you are

6    not a citizen of the United States, this plea may cause

7    you to be deported or removed from the United States and

8    may result in denial of naturalization or citizenship,

9    denial of residency status, or denial of amnesty;

10   understood?

11             THE DEFENDANT:  Yes, I do.

12             MR. PEREYRA-SUAREZ:  And he is a United States

13   citizen, Your Honor.

14             THE COURT:  Thank you.  I just repeat that as a

15   matter of caution in every case.

16             Mr. Hawthorne, do you understand the possible

17   consequences of your plea including the maximum sentence

18   you can receive, any mandatory minimum sentence, and the

19   other terms which the Assistant United States Attorney

20   and I have described?

21             THE DEFENDANT:  Yes, I understand.

22             THE COURT:  Do you understand that parole has

23   been abolished and that, if your sentenced to prison,

24   you'll not be released on parole?

25             THE DEFENDANT:  Yes, I understand.

1          THE COURT:  Do you have any questions regarding

2     the potential sentence that you may receive if the Court

3     accepts your plea of guilty?

4          THE DEFENDANT:  Not at this time, Your Honor.

5          THE COURT:  Have you discussed the possible

6     punishment, the facts of your case, and possible

7     defenses with your attorney?

8          THE DEFENDANT:  I believe we've touched on most

9     of them, yes.

10          THE COURT:  Do you have any questions for me?

11          THE DEFENDANT:  Not at this time, Your Honor,

12     no.

13          THE COURT:  Do you have anything additional you

14     would like me to cover or address?

15          THE DEFENDANT:  No, Your Honor.  Everything's

16     fine.

17          THE COURT:  Have you understood everything that

18     has been said so far?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COUR:  Is there any reason why I should not

21     continue with these proceedings and take your plea

22     today?

23          THE DEFENDANT:  Not at this time, Your Honor.

24          THE COURT:  Mr. Hawthorne, you will be

25     sentenced under the Sentencing Reform Act of 1984.  The

1    United States Sentencing Commission has issued

2    guidelines that judges must consult and take into

3    account but are not required to follow in determining

4    the sentence in criminal cases.  In determining

5    sentence, the Court's obligation is to calculate the

6    applicable guideline range and to consider that range,

7    possible departures under the sentencing guidelines, and

8    other sentencing factors under the relevant statute,

9    Title 18, United States Code, Section 3553(a).

10              Have you and your attorney talked about how the

11   sentencing guidelines might be applied in your case?

12              THE DEFENDANT:  I believe so; yes, Your Honor.

13              THE COURT:  Has your lawyer explained to you

14   how the various elements and factors will be used to

15   determine your sentence?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  Do you understand that neither the

18   Court nor your lawyer will be able to determine the

19   guideline range for your case until after a presentence

20   report has been prepared by the Probation Office?

21              THE DEFENDANT:  I understand.

22              THE COURT:  Do you understand that you and the

23   Government will have an opportunity to review the

24   Probation Officer's report and challenge the reported

25   facts and the guidelines range calculated by the

1  Probation Officer and to suggest the Court consider

2  other facts?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand that the sentence

5  imposed may be different from any estimate your lawyer

6  has given you?

7          THE DEFENDANT:  Yes, I do understand.

8          THE COURT:  Do you also understand that, after

9  your sentencing guideline range has been calculated by

10  the Probation Department, this Court has the authority

11  to impose a sentence that is more severe or less severe

12  than the sentence called for in the guidelines?

13          THE DEFENDANT:  Yes, Your Honor, I understand.

14          THE COURT:  Do you understand that neither this

15  uncertainty nor the disappointment you may feel over the

16  guidelines range for your case or the Court's eventual

17  sentence would be a basis to withdraw your plea?

18          THE DEFENDANT:  I understand.

19          THE COURT:  Mr. Hawthorne, I'd like to call to

20  your attention, again, to the actual plea agreement, to

21  the signature pages beginning with page 33, line 7.

22          Is this your signature, sir?

23          THE DEFENDANT:  Yes, it is, Your Honor.

24          THE COURT:  And did you sign it on the date

25  stated, March 12th, 2011?

40

```
 1              THE DEFENDANT:  I did, Your Honor.
 2              THE COURT:  And then I direct your attention to
 3    the next page, page 34, line 21.
 4              Is that your signature?
 5              THE DEFENDANT:  Yes, Your Honor.
 6              THE COURT:  And did you sign on the date
 7    indicated, March -- the date written, March 12th, 2011?
 8              THE DEFENDANT:  I did, Your Honor.
 9              THE COURT:  Did you read the plea agreement and
10    discuss it with your lawyer before you signed it?
11              THE DEFENDANT:  We did, yes.
12              THE COURT:  Do you understand the terms of this
13    plea agreement?
14              THE DEFENDANT:  I do, Your Honor.
15              THE COURT:  Do you want any more time to
16    discuss it with your lawyer?
17              THE DEFENDANT:  Not at this time, no.
18              THE COURT:  Do you understand -- understood
19    that the Court is not a party to the agreement and is
20    not bound by its terms?
21              THE DEFENDANT:  I do understand.
22              THE COURT:  Are the terms of the agreement the
23    entire understanding that you have with the Government?
24              THE DEFENDANT:  Yes.
25              THE COURT:  Other than what's contained in the
```

1    written plea agreement, has anyone made you any

2    promises, representations, or guarantees of any kind in

3    an effort to get you to plead guilty in this case?

4            THE DEFENDANT:  No, Your Honor.

5            THE COURT:  Other than what is contained in the

6    written plea agreement and other than a general

7    discussion of the guidelines range and other sentencing

8    factors with your attorney, has anyone made you any

9    promises of leniency, a particular sentence, or other

10   inducement of any kind to get you to plead guilty?

11           THE DEFENDANT:  No, Your Honor.

12           THE COURT:  Has anyone told you the Court will

13   impose any specific sentence in the event your plea of

14   guilty is accepted?

15           THE DEFENDANT:  No, Your Honor.

16           THE COURT:  Has anyone attempted in any way to

17   threaten you, a family member, or anyone close to you to

18   force you to plead guilty in this case?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Are you pleading guilty voluntarily

21   and of your own free will?

22           THE DEFENDANT:  I am, Your Honor.

23           THE COURT:  As part of the plea agreement, the

24   Government has agreed to make certain recommendations

25   concerning your sentence or the Offense Level used in

1    fixing your sentence.

2            Do you understand that these terms of the plea

3    agreement are merely recommendations to the Court and

4    that the Court can reject the recommendations and impose

5    a sentence that is more severe than you may expect

6    without allowing you to withdraw your plea?

7            THE DEFENDANT:  Yes, Your Honor, I do

8    understand.

9            THE COURT:  Thank you.  I would -- I would next

10   address the issue of appeal.  Before I do, I need to ask

11   my Clerk to call the attorneys that were going to appear

12   telephonically at 2:45.

13           As to the appeal issues, Mr. Hawthorne, I would

14   direct your attention to page 25 and 26 and 27 of the

15   plea agreement beginning with paragraph 26 under the

16   Title "Waiver of Appeal of Conviction," and

17   paragraphs 27, 28, and 29 under the section entitled

18   "Limited Mutual Waiver of Appeal of Sentence and

19   Collateral Attack."

20           Please listen carefully because I would ask the

21   U.S. Attorney to read these portions to you.

22           MS. GARCIA:  The Defendant understands, that

23   with the exception of an appeal based on a claim that

24   the Defendant's guilty plea was involuntary, by pleading

25   guilty, the Defendant is waiving and giving up any right

1    to appeal the Defendant's conviction on the offense to

2    which the Defendant is pleading guilty.

3              Limited Mutual Waiver of Appeal of Sentence and

4    Collateral Attack, the Defendant gives up the right to

5    appeal all of the following:  The procedures and

6    calculations used to determine and impose any portion of

7    the sentence, the term of imprisonment imposed by the

8    Court provided it is within the statutory maximum, the

9    fine imposed by the Court provided it is within the

10   statutory maximum, the term of probation or supervised

11   release imposed by the Court provided it is within the

12   statutory maximum, and any of the following conditions

13   of probation or supervised release imposed by the Court,

14   the standard conditions set forth in General Orders 318,

15   01-05 and/or 05-02 of this Court, the drug testing

16   conditions mandated by Title 18, United States Code,

17   Section 3563, Subsection (a)(5), and 3583,

18   Subsection (d), the alcohol and drug use condition

19   authorized by Title 18, United States Code, Section

20   3563, Subsection (d)(7), and any conditions of probation

21   or supervised release agreed to by the Defendant in

22   paragraph 2 of the plea agreement.

23             Notwithstanding the foregoing, the Defendant

24   retains the ability to appeal the amount or terms of any

25   restitution order and the Court's determination of the

1    Defendant's Criminal History Category.

2         The Defendant also gives up any right to bring

3    a post-conviction collateral attack on the conviction or

4    sentence except a post-conviction collateral attack

5    based on a claim of ineffectiveness of counsel, a claim

6    of newly discovered evidence, or an explicitly

7    retroactive change in the applicable sentencing

8    guidelines, sentencing statutes, or statutes of

9    conviction.

10        The U.S. Attorney's Office has agreed that,

11   provided all portions of the sentence are at or above

12   20 years of imprisonment and at or below the statutory

13   maximum, the U.S. Attorney Offices give up their right

14   to appeal any portion of the sentence with the exception

15   that the U.S. Attorney Offices reserve the right to

16   appeal the amount of restitution ordered.

17        THE COURT:  Thank you.

18        Mr. Hawthorne, did you discuss giving up your

19   right to appeal with your lawyer?

20        THE DEFENDANT:  I believe so, Your Honor.

21        THE COURT:  Pardon?

22        THE DEFENDANT:  I believe so, yes.

23        THE COURT:  Do you want to take a few more

24   minutes to review?

25        THE DEFENDANT:  I understand, Your Honor.  Yes,

1    we did.

2            THE COURT:  Based on that discussion and having

3    considered this issue, do you agree that you're giving

4    up your right to appeal on the terms and conditions set

5    forth in the plea agreement?

6            THE DEFENDANT:  I agree.

7            THE COURT:  I would ask your attorney,

8    Mr. Pererya-Suarez, the plea agreement indicates that it

9    was signed by you and your client on March 12th; is that

10   correct?

11           MR. PEREYRA-SUAREZ:  That is correct,

12   Your Honor.

13           THE COURT:  Did your client sign the agreement

14   in your presence?

15           MR. PEREYRA-SUAREZ:  He did.

16           THE COURT:  Did you discuss the contents of the

17   plea agreement with your client before he signed it?

18           MR. PEREYRA-SUAREZ:  Yes, I did, Your Honor.

19           THE COURT:  Does the plea agreement represent

20   the entire agreement between your client and the

21   Government?

22           MR. PEREYRA-SUAREZ:  It does.

23           THE COURT:  Did you review the facts of the

24   case and all the discovery provided by the Government?

25           MR. PEREYRA-SUAREZ:  Yes, I did.

1          THE COURT:  Did you review those facts and

2    discovery with your client?

3          MR. PEREYRA-SUAREZ:  Yes, I did.

4          THE COURT:  Did you pursue with your client the

5    possible defenses he might have?

6          MR. PEREYRA-SUAREZ:  Yes, we did discuss all of

7    the potential defenses, Your Honor.

8          THE COURT:  Have you advised your client

9    concerning the legality or admissibility of any

10   statement or confessions or other evidence the

11   Government has against him?

12         THE DEFENDANT:  Yes, we did have those

13   discussions.

14         THE COURT:  To the best of your knowledge, is

15   your client pleading guilty because of any illegally

16   obtained evidence in the possession of the Government?

17         MR. PEREYRA-SUAREZ:  No, Your Honor.

18         THE COURT:  Did you and your client agree it

19   was in his best interest to enter into this agreement?

20         MR. PEREYRA-SUAREZ:  Yes, we did.

21         THE COURT:  Is it your opinion that your client

22   is entering into this plea freely and voluntarily with a

23   full knowledge of the charges and the consequences of

24   the plea?

25         MR. PEREYRA-SUAREZ:  Yes, Your Honor.

1          THE COURT:  Other than what's contained in the

2    written plea agreement, have there been any promises,

3    representations, or guarantees made either to you or

4    your client?

5          MR. PEREYRA-SUAREZ:  No, Your Honor.

6          THE COURT:  Other than what is contained in the

7    written plea agreement and other than a general

8    discussion of the sentencing guideline range and other

9    sentencing considerations, have you given any indication

10   to your client of what specific sentence the Court would

11   impose in the event the Court accepts his plea of

12   guilty?

13         MR. PEREYRA-SUAREZ:  No, I did not, Your Honor.

14         THE COURT:  Do you know of any reason why this

15   Court should not accept your client's plea?

16         MR. PEREYRA-SUAREZ:  No, Your Honor.

17         THE COURT:  Do you join in the waiver of jury

18   trial and concur in the plea?

19         MR. PEREYRA-SUAREZ:  I do.

20         THE COURT:  I would ask the Assistant U.S.

21   Attorney:  Other than what is expressly contained in the

22   written plea agreement, has the Government made any

23   promises, representations, or guarantees either to the

24   Defendant or his attorney?

25         MS. GARCIA:  No, Your Honor.

1           THE COURT:  Does the Government waive jury

2     trial?

3           MS. GARCIA:  Yes, Your Honor.

4           THE COURT:  Mr. Hawthorne, are you satisfied

5     with the representation your lawyer has provided?

6           THE DEFENDANT:  I am, Your Honor.

7           THE COURT:  Have you told your lawyer

8     everything you know about your case especially about any

9     statements or confessions or other evidence you know

10    about that the Government has against you?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Do you believe that your lawyer has

13    fully considered any defense you may have to the

14    charges?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Do you believe that he has fully

17    advised you concerning this matter?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you believe you've had enough

20    time to discuss this matter with your lawyer?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Do you believe you understand

23    everything that happened here today and everything that

24    has been said by the lawyers and by me?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you believe you understand the

2     consequences to you of this plea?

3          THE DEFENDANT:  Yes.  Yes, Your Honor, I do.

4          THE COURT:  Do you believe you are competent to

5     make the decision to plead guilty?

6          THE DEFENDANT:  I am, Your Honor.

7          THE COURT:  Do you know of any reason why this

8     Court should not accept your plea of guilty?

9          THE DEFENDANT:  No, Your Honor, I do not.

10         THE COURT:  Do you understand, then, that all

11    that is left in your case, if I accept your plea of

12    guilty, is the imposition of sentence, which will

13    include imprisonment?

14         THE DEFENDANT:  Yes, Your Honor, I understand.

15         THE COURT:  Having in mind all that we've

16    discussed regarding your plea of guilty, the rights you

17    will be giving up, and the maximum sentence you may

18    receive, do you still want to plead guilty?

19         THE DEFENDANT:  I do, Your Honor.

20         MR. PEREYRA-SUAREZ:  Your Honor, before we

21    forget, I just wanted to reiterate that my client has

22    read the entire factual basis that's set forth in the

23    plea agreement, and he agrees with that factual basis.

24         THE COURT:  Thank you.  That's -- we are now in

25    the factual basis period of --

```
 1                MR. PEREYRA-SUAREZ:  I'm sorry.

 2                THE COURT:  -- of the trial, and as

 3      Mr. Pereyra-Suarez stated, we should draw attention to

 4      the factual basis in the plea agreement.

 5                Mr. Hawthorne, if you would take a look at the

 6      factual basis beginning on page 16, paragraph 8, and

 7      continuing --

 8                MR. PEREYRA-SUAREZ:  I think it's paragraph 18,

 9      Your Honor.

10                THE COURT:  18.  Thank you -- and continue

11      through page 20, I would ask you to review that and

12      after you review that, I will ask if you everything said

13      in this factual basis about you and your conduct and

14      intent are true and correct.

15                What I would offer to do is take a short break

16      and allow you to sit down.

17                MR. PEREYRA-SUAREZ:  May I inquire of my

18      client, Your Honor --

19                THE COURT:  Yes.

20                MR. PEREYRA-SUAREZ:  -- because we talked about

21      this in the last few days.

22                THE DEFENDANT:  Your Honor, I had several days

23      to review the factual basis and am ready to proceed.

24                THE COURT:  Okay.  So you've read the entire

25      factual basis?
```

1          THE DEFENDANT:  Yes, I have, Your Honor.

2          THE COURT:  And done so carefully?

3          THE DEFENDANT:  I have, Your Honor.

4          THE COURT:  And discussed it with your lawyer

5    as well?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  Do you understand the factual

8    basis?

9          THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  Is everything said about you and

11   your conduct and intent in the factual basis true and

12   correct?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Are you pleading guilty because you

15   did the things set forth in the factual basis?

16          THE DEFENDANT:  I am, Your Honor.

17          THE COURT:  Are you pleading guilty because you

18   did the things charged in the Indictment to which you're

19   pleading guilty?

20          THE DEFENDANT:  I am, Your Honor.

21          THE COURT:  Are you pleading guilty because you

22   are guilty?

23          THE DEFENDANT:  I am, Your Honor.

24          THE COURT:  Does the Government have any

25   additional questions or requests?

```
1              MS. GARCIA:  No, Your Honor.

2              THE COURT:  Mr. Pereyra-Suarez, anything else

3    you would like to raise at this time?

4              MR. PEREYRA-SUAREZ:  No.  The only thing that I

5    already raised with your Court Clerk is that I would

6    like the Court to set a sentencing hearing date at least

7    six months out so that Mr. Hawthorne can do all of the

8    things that he's agreed to do in this plea agreement.

9              THE COURT:  All right.

10             MS. GARCIA:  And the Government has no

11   objection, Your Honor.

12             THE COURT:  That will be fine.  There is good

13   cause for that if it's agreeable to your client.

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  I understand the Government's

16   satisfied with the factual basis; is that correct?

17             MS. GARCIA:  Yes, Your Honor.

18             THE COURT:  Do counsel agree that the Court has

19   complied with the requirements of Rule 11.

20             MR. PEREYRA-SUAREZ:  I am in agreement with

21   that, Your Honor.

22             MS. GARCIA:  Yes, Your Honor.  Thank you.

23             THE COURT:  As to the California case,

24   Mr. Pereyra-Suarez, may I address your client for a

25   plea?
```

1          MR. PEREYRA-SUAREZ:  Yes, please.

2          THE COURT:  Mr. Ryan Hawthorne, in

3    Case No. CR 09-68(B), hyphen, 6, referred to as the

4    California case, how do you plead to Count 1 of the

5    Second Superseding Indictment?

6          THE DEFENDANT:  I plead guilty, Your Honor.

7          THE COURT:  Mr. Hawthorne, I'm going to make

8    certain findings.  If you don't understand what I say or

9    if you disagree with what I say or if you want to talk

10   to your lawyer, please interrupt me right away or ask

11   your lower to interrupt me.

12         Several times during the plea agreement -- you

13   may not have been aware of this, but you said when asked

14   a question regarding if you had any questions or if you

15   understood -- you would answer, for example, with

16   respect to questions, "No, not now," or if you need to

17   talk to your attorney further, and you said, "No, not

18   now."

19         What did you mean when you said, "No, not now"?

20         THE DEFENDANT:  I believe I said, "Not at this

21   time"; correct.

22         THE COURT:  Then when you said that, the

23   question entered my mind he said not at this time.

24         What time are you referring to?

25         THE DEFENDANT:  If I could withdraw that then

1   my answers will be no, there is no -- not at this time

2   past that.  So I do understand the questions.

3            MR. PEREYRA-SUAREZ:  I think it was a figure of

4   speech, Your Honor, and maybe he can confirm that to the

5   Court.

6            THE DEFENDANT:  Yes, it was a figure of speech.

7            THE COURT:  Okay.  I -- I thought so.  That's

8   why I didn't raise it, but I thought it would be good to

9   be sure.

10           THE DEFENDANT:  Right.  I guess if there's

11  anything more or something came up before leaving the

12  courtroom today.  So that's it.

13           THE COURT:  All right.  Do you want to take a

14  break and discuss things over?

15           THE DEFENDANT:  No, Your Honor, I'm fine.

16  Thank you.

17           THE COURT:  All right.  Then unless there's

18  anything further that counsel requests in this case,

19  09-68(b), hyphen, 6, the United States of America versus

20  Ryan Hawthorne, the Court having questioned the

21  Defendant and his attorney on the offer of his plea of

22  guilty to Count 1 of the Second Superseding Indictment,

23  a felony, the Defendant and his attorney having advised

24  the Court that they have conferred concerning the

25  offered plea of guilty and all aspects of the charges

1    against the Defendant and any defenses he may have, and

2    the Court having observed the Defendant's intelligence,

3    demeanor, and attitude while answering questions, and

4    the Court having observed that the Defendant does not

5    appear to be under the influence of any medicine, drug,

6    or other substance or factor that might affect his

7    actions or judgment in any manner, the Court finds that

8    the Defendant is fully competent and capable of entering

9    an informed plea and that he is aware of the nature of

10   the charges and the consequences of the plea.

11        The Court further finds that the plea of guilty

12   is knowingly, voluntarily, and intelligently made with a

13   full understanding of the nature of the charges, the

14   consequences of the plea, and the Defendant's

15   constitutional rights.

16        The Court further finds that the plea is

17   supported by an independent factual basis containing

18   each of the elements of the offense, and the Court,

19   therefore, accepts the plea and orders that the plea be

20   entered.

21        Mr. Hawthorne, a written plea -- a written

22   presentence report will be prepared by the Probation

23   Office to assist in sentencing.  You will be asked to

24   provide information for that report.  Your lawyer may be

25   present if you wish.  You and your lawyer will be able

1    to read the report and file any objections before the

2    sentencing hearing.  You and your lawyer will be able to

3    speak on your behalf at the hearing.  I urge you to

4    continue to consult with your lawyer throughout this

5    process so that he can answer any questions you may

6    have.  I would refer Mr. Hawthorne to the Probation

7    Office for a presentence report.

8            I have indicated that the Court finds good

9    cause to set the sentencing date in about six months.

10   I'd ask counsel what dates would be available.  My Clerk

11   suggests at this time February 13th, 2011, at 10:30 A.M.

12   or -- or 11:30 A.M.

13           MS. GARCIA:  That works for the Government,

14   Your Honor.

15           MR. PEREYRA-SUAREZ:  That's fine, and I would

16   request 11:30 in the morning.

17           THE COURT:  11:30 would be fine,

18   February 13th, 2011, at 11:30.  Of course, if good cause

19   arises which creates a need to continue that date, I'll

20   consider it as well.

21           Mr. Hawthorne, I am repeating myself, but I

22   would ask you again is February 13th, 2012 -- I may have

23   said 2011 -- but February 13th, 2012, is that acceptable

24   for you for sentencing?

25           THE DEFENDANT:  Yes, Your Honor, it is.

1          THE COURT:  Okay.  Anything else by the

2     Government?

3          MR. PEREYRA-SUAREZ:  And, Your Honor -- I'm

4     sorry.

5          MS. GARCIA:  Nothing for the Government at this

6     time, Your Honor.

7          MR. PEREYRA-SUAREZ:  I just want to be sure

8     that the record reflects what the Court's ruling is with

9     respect to seal any portion of the transcript of these

10    proceedings.

11         THE COURT:  Yes.  I'll repeat myself, and if

12    I'm incorrect or you disagree, let me know.

13         MR. PEREYRA-SUAREZ:  I just lost track, and I

14    want to make sure we're all clear.

15         THE COURT:  Pursuant to previous order -- the

16    previous order, the plea agreement for the Defendant,

17    Ryan Hawthorne, is under seal, and I find good cause to

18    place this plea agreement under seal.

19                 **(WHEREUPON, PAGE 57, LINE 19, THROUGH**

20                 **PAGE 58, LINE 21, WAS PLACED UNDER SEAL PER**

21                 **ORDER OF THE COURT.)**

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22         THE COURT:  Anything else.

23         MR. PEREYRA-SUAREZ:  No, Your Honor.

24         MS. GARCIA:  No, Your Honor.  Thank you.

25         THE COURT:  Thank you very much.

1                    MR. PEREYRA-SUAREZ:   Thank you.

2              THE CLERK:   This Court is adjourned.

3                    (Proceedings concluded at 3:00 P.M.)

4

5                          --oOo--

1                         **C E R T I F I C A T E**

2

3              I hereby certify that, pursuant to Title 28,

4     Section 753, United States Code, the foregoing is a true

5     and correct partially sealed transcript of the

6     stenographically reported proceedings held in the

7     above-entitled matter and that the transcript page

8     format is in conformance with the regulations of the

9     Judicial Conference of the United States.

10             Certified on July 17, 2012.

11

12

13

14          _____

                    KATHERINE M. STRIDE, CSR, RPR
15                  Official Court Reporter
                    License No. 11773
16

17

18

19

20

21

22

23

24

25